**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**PHITROY GORDON,**

        **Plaintiff,**

    **v.**                                **CIVIL ACTION NO. 2:04cv673**

**MICHAEL CHERTOFF, Secretary,**
**United States Department**
**of Homeland Security, ET AL.,**

        **Defendants.**


*MEMORANDUM OPINION & ORDER*

Before the Court is the Motion of Phitroy Gordon ("Plaintiff") for Summary Judgment. Additionally, the Defendants Michael Chertoff, Secretary of the United States Department of Homeland Security ("DHS"), Eduardo Aguirre, Director of the United States Citizenship and Immigration Services ("CIS"), Phyllis Howard, CIS District Director, and Mary Ann Russell, CIS Officer in Charge, (collectively, "Defendants") have filed a cross Motion to Dismiss, or in the alternative, Motion for Summary Judgment.[1]  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion to Dismiss is **GRANTED**.

.

---

[1]  At the time Plaintiff's complaint was filed, Tom Ridge was Secretary of DHS, and he was named as a defendant.

## I. FACTS AND PROCEDURAL HISTORY

The parties have stipulated that the following facts are true.  Plaintiff is an active duty member of the United States Navy ("USN").  Plaintiff is a citizen of Jamaica, who has resided in the United States as a legal permanent resident since September 4, 1991.

On July 7, 2000, Plaintiff filed his application for naturalization.  Plaintiff was interviewed on November 20, 2001 in regards to this application.  No decision was made until December 30, 2003, at which time Plaintiff was denied citizenship on the basis of poor moral character, pursuant to the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1440.   The decision indicated that Plaintiff was barred from citizenship pursuant to INA § 101(a)(43) and 8 C.F.R. § 316.10(a)(2)(b)(ii), because his convictions in January 1999 for Pointing, Holding, or Brandishing a Firearm and for Willful Discharge of a Firearm both constituted aggravated felonies.

On October 6, 2004, a rehearing was held on Plaintiff's denial.  The final decision was issued on October 27, 2004.  The CIS agreed with Plaintiff that the initial ruling was incorrect, and the firearm convictions did not make him an aggravated felon for the purposes of his application.  However, the CIS upheld the decision to deny Plaintiff citizenship because his convictions still indicated poor moral character, pursuant to 8 C.F.R. § 316.10(a)(2) and INA § 237(a)(2)(c).

Pursuant to 8 U.S.C. § 1421(c), Plaintiff filed a Petition for Review of the Denial of his Application for Naturalization on November 9, 2004.  On January 14, 2005, Defendants filed their Answer.  On June 14, 2005, Plaintiff filed a Motion for Summary Judgment.  After receiving an extension of time, Defendants filed a Response and filed their own Motion to

2

Dismiss, or in the alternative Motion for Summary Judgment.  On July 22, 2005, Plaintiff filed a

Response to Defendants' motion.  Defendants filed a rebuttal on July 26, 2005.  On August 2,

2005 the Court received a rebuttal brief from Plaintiff.[2]  This matter is now ripe for adjudication.

## II.  LEGAL STANDARDS

### A.  Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to

state a claim upon which relief can be granted.  Although courts may only rely upon the

complaint's allegations and those documents attached as exhibits or incorporated by reference,

*Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985), courts will

favorably construe the allegations of the complainant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974).  Courts must assume that the facts alleged in the plaintiff's complaint are true.  *McNair v.*

*Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).  A court will only grant a motion to

dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state

of facts which could be proved in support of his claim."  *Adams v. Bain*, 697 F.2d 1213, 1216

(4th Cir. 1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)).  A plaintiff's

misconception or mislabeling of the proper legal theory of the claim is not grounds for dismissal;

a court must look to any legal theory supported by the facts alleged, so long as the plaintiff's

complaint gives fair notice of the claim and the grounds upon which it rests.  *Williams v. New*

*Castle County*, 970 F.2d 1260, 1265-66 (3d Cir. 1992); *Thomas W. Garland, Inc. v. City of St.*

*Louis*, 596 F.2d 784, 787 (8th Cir. 1979); *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760-61 (9th

---

[2] Pursuant to Local Rule 7(e)(1), the brief was not authorized and therefore, not filed.

Cir. 1975); *Dostchay v. Nat'l Mut. Ins. Co.*, 246 F.2d 221, 223 (5th Cir. 1957); *Simmons v. Cmty. Serv. Providers, Inc.*, 847 F.Supp. 351, 352-53 (E.D. Pa. 1994).

If matters outside the pleading are presented by the moving party and not excluded by the Court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b).  If a motion to dismiss is converted to a motion for summary judgment, the Court must give all parties "a reasonable opportunity to present all material made pertinent by such a motion." FED. R. CIV. P. 12(b).  The moving party's attachment of additional materials to the motion to dismiss does not automatically convert the motion to one for summary judgment; the Court must accept and consider those additional materials before a conversion is required.  *Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir. 1991).  However, the Court may consider any document attached to the motion to dismiss by a defendant when "a plaintiff fails to introduce a pertinent document as part of his complaint" and the document is "one of unquestioned authenticity."  *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995), *aff'd on other grounds*, 103 F.3d 351 (4th Cir. 1996); *accord Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002)(noting that when a plaintiff relies upon an agreement in his complaint, the court may consider the agreement in ruling on a motion to dismiss); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994); *Parrino v. FHP, Inc.* 146 F.3d 699, 705-06 (9th Cir. 1998) ("A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'")(quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

**B.  Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c)); *Haulbrook v. Michelin North Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001)(citing *McKinney v. Bd. of Trustees*, 955 F.2d 924, 928 (4th Cir. 1992)("[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law.")  In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

In this case, Defendants have filed a Motion to Dismiss, or in the alternative Motion for Summary Judgment.  The Court finds that it can decide this matter without accepting and considering any documents attached by Defendants that are not pertinent to Plaintiff's Complaint and of unquestioned authenticity.  Therefore, the Court will not convert Defendants' Motion to Dismiss to a motion for summary judgment.

5

## III.  DISCUSSION

In ruling on Plaintiff's Motion for Summary Judgment and Defendants' Motion to Dismiss, the primary issue for this Court to consider is whether Plaintiff has failed to make the requisite showing of good moral character under 8 U.S.C. § 1440, INA § 329 ("INA § 329").  As a preliminary matter, the Court must determine the time period in which to evaluate Plaintiff's conduct.  Second, the Court must determine whether Plaintiff meets the requisite showing of good moral character during that time period.  The Court addresses each of these issues in turn.

### A.  Time Period for Determining Good Moral Character

Defendants and Plaintiff agree that, pursuant to Executive Order No. 13269 ("Executive Order"), Plaintiff's service in the Armed Forces of the United States qualify his application for adjudication under INA § 329.[3]  The Executive Order, dated July 3, 2002,  provides for expedited naturalization for aliens and non-citizen nationals serving in active-duty status in the Armed Forces of the United States during the period beginning September 11, 2001.  Exec. Order No. 13269, 67 Fed. Reg. 45287 (Jan. 3, 2002).  The Executive Order provides that any person serving honorably in active-duty status in the Armed Forces is eligible for naturalization as provided for by INA § 329.  *Id.*  The eligibility requirements for naturalization under INA § 329 are specifically set forth in 8 C.F.R. § 329.2.  On the requirement of good moral character, 8 C.F.R. § 329.2 provides that an applicant must establish that he "[h]as been, *for at least one year prior to filing* the application for naturalization, and continues to be, of good moral character."  8 C.F.R § 329.2(d) (2005) (emphasis added).

---

[3]  It is undisputed that Plaintiff's application for naturalization was evaluated under INA § 329 and not under 8 U.S.C. §1439(e), INA § 328 ("INA § 328").  As such, the Plaintiff's arguments under INA § 328 are inapplicable, and the Court will not consider them.

Defendants argue that the Court should consider the application filing date to be July 7, 2000, the date Plaintiff filed his application for naturalization.  Plaintiff, in the alternative, asserts that July 7, 2000 is the incorrect filing date because he was not eligible to file an application under INA § 329 until at least July 3, 2002, when the Executive Order was signed by the President.  As such, Plaintiff urges the Court to consider the filing date to be either July 3, 2002, the date the Executive Order came into effect, or December 30, 2003, the date Plaintiff's application was adjudicated.  The Court finds Plaintiff's argument unsupported by the plain language of INA § 329.

Courts have consistently held that, "[i]f the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' "  *United States v. Turkette,* 452 U.S. 576, 580 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)); *see also Rubin v. United States*, 449 U.S. 424, 430 (1981) (stating that where the terms of a statute are found to be unambiguous, judicial inquiry is complete, except in exception and rare circumstances).  Similarly, the plain language meaning in a regulation governs unless that meaning would lead to absurd results.  *Turkette*, 452 U.S. at 580.

In this case, the language in 8 C.F.R. §329.2(d) is unambiguous.  The regulation provides that the period for which an applicant must establish good character is "at least one year prior to *filing* the application for naturalization." 8 C.F.R § 329.2(d) (emphasis added).  The Court finds no showing of legislative intent that would attach any meaning other than the ordinary meaning attached to the word "filing."  The parties do not dispute that Plaintiff filed his application on

7

July 7, 2000.  Accordingly, Court will consider Plaintiff's conduct for good moral character from July 7, 1999 to July 7, 2000.

## B.  Requirement of Good Moral Character During the Relevant Time Period

During the one year period extending from July 7, 1999 to July 7, 2000, Defendants argue that Plaintiff's conviction record contains three crimes of moral turpitude:  (1) a conviction on August 9, 1999, for Brandishing a Firearm on January 20, 1999, (2) a conviction on August 9, 1999, for Discharge of a Firearm on January 20, 1999, and (3) a conviction on February 15, 2000 for violating VA. CODE ANN. § 18.2-371 ("Virginia Code § 18.2-371") on or about November 8, 1999.  Defendants assert that Plaintiff's convictions are crimes of moral turpitude that bar a finding of good moral character.

"Good moral character . . . was intended by Congress to mean a broad attachment to the principles of the Constitution of the United States and disposition to the good order and happiness of the United States." *Sugarman v. Dougall*, 413 U.S. 634, 600 (1973) (citing H.R.Rep. No. 1365, 82d Cong.2d Sess., 78,80 (1952)).  The applicable regulation provides in relevant part, "[a]n applicant shall be found to lack good moral character if during the statutory period the applicant . . . [c]*ommitted* one or more crimes involving moral turpitude . . . for which the applicant was *convicted*."  8 C.F.R. § 316.10(b)(2)(i) (2005) (emphasis added).  In this case, Plaintiff was convicted of all three crimes during the relevant one year period, however, Plaintiff actually committed two of these crimes before the relevant time period.  Accordingly, in determining whether Plaintiff is barred from establishing good moral character during the one year period, the Court will examine only the conviction for violating acts committed during the time frame, specifically Virginia Code § 18.2-371.

During the time period from July 7, 1999 to July 7, 2000, Plaintiff committed and pled

guilty to violating Virginia Code § 18.2-371, which in relevant part, reads:

> [A]ny person 18 years of age or older, including the parent of any
> child who (1) willfully contributes to, encourages, or causes any
> act, omission, or condition which renders a child delinquent, in
> need of services, in need of supervision, or abused or neglected as
> defined in § 16.1-228 . . . shall be guilty of a Class 1 misdemeanor.

Code of Virginia § 18.2-371 (2004).  In accordance with the conviction, the Juvenile and

Domestic Relations District Court issued a two year protective order,[4] ordering Plaintiff to

"refrain from committing further acts of family abuse," "to complete parenting classes," and "be

of good behavior toward" his stepdaughter.

Relying exclusively on the language in the protective order, Defendants urge the Court to

infer that Plaintiff's conviction under Virginia Code § 18.2-371 was one of corporeal

punishment, and therefore a crime of moral turpitude that bars a finding of good moral character.

Plaintiff, in response, cites three specific cases to support his contention that the conviction does

not rise to the level of a crime of moral turpitude.  Plaintiff also argues, in the alternative, that

even if the Court classifies the crime as one of moral turpitude, he falls within the petty offense

exception.

Congress chose not to define "crime involving moral turpitude," but rather left the term to

"future administrative and judicial interpretation."  *Cabral v. INS*, 15 F.3d 193, 195 (1st Cir.

1994).  *See Jordan v. De George*, 341 U.S. 223, 233-34, (1951); S. Rep. No. 81-1515, at 351

(1950) (noting that the Senate subcommittee did not adopt the suggestion that "there be a listing

---

[4]  Pursuant to 8 U.S.C. § 1229a(c)(3)(B) the Court will consider the protective order as
evidence of the conviction.

of crimes and circumstances comprehended within the meaning of moral turpitude"). Generally, courts have broadly defined moral turpitude to be a "concept, which refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (quoting *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988)); *see Jordan*, 341 U.S. at 226 (stating that the term as used in the Immigration Act was intended to include only crimes of violence, or crimes which are commonly thought of as involving baseness, vileness or depravity).

The Court finds the record of conviction under Virginia Code § 18.2-371 insufficient to support a finding that Defendant's conviction is a crime of moral turpitude. As Plaintiff correctly cites, the defendants in *Matter of V T* , *Matter of Y*, and *Matter of C* were all convicted of "Contributing to the Delinquency of a Minor," and in each case the courts found the criminal statutes to be extremely broad in scope. *See Matter of V T*, 2 I. & N. Dec. 216 (BIA 1944)(stating that the statute was "extremely broad in scope and . . . include[ed] many minor offenses which would not involve moral turpitude."); *Matter of Y*, I. & N. Dec. 662, 663 (BIA 1943)(holding that "because of the indefiniteness of the complaint, and the broad scope of the language contained in [the statute], we are unable to determine whether the alien's offenses is one involving moral turpitude."); *Matter of C*, I. & N. Dec. 220 (BIA 1944). Further, the courts found that the crime was not one of moral turpitude on the basis that there was not enough detail in the information or record of conviction to establish that the defendants violated a particular offense under the broad language of the statute. *See Matter of V T*, 2 I & N Dec. at 217 (holding that "[i]n view of the wide scope of the statute and the absence of anything in the information or

10

record of conviction establishing the particular offense of which the respondent was convicted, we cannot conclude that the has been sentenced for the commission of a crime involving moral turpitude").

Plaintiff's case is analogous.  Like the defendants in the above cited cases, Plaintiff's conviction under Virginia Code § 18.2-371 was for Contributing to the Delinquency of a Minor. Similarly, Virginia Code § 18.2-371 contains a broad list of violations.  Specifically, the violations are acts that render a child (1) delinquent, (2) in need of services, (3) in need of supervision, or (4) abused or neglected.  The Court finds the record of conviction too ambiguous to accurately determine the specific violation Defendant committed under the statute.

Nevertheless, Defendants argue that the protective order provides sufficient basis to infer that Plaintiff's violation under the statute was one of abuse.  However, even assuming this inference as true, the conclusion that Plaintiff's crime is one of moral turpitude, based on the record alone, is groundless.  Although courts have held that cruel or inhumane corporal punishment or physical abuse rise to the level of crimes of moral turpitude, Plaintiff's record of conviction is insufficient to indicate that his actions rose to the level of inhumane corporal punishment or physical abuse.  *See Guerrero de Nodahl v. INS*, 407 F.2d 1405 (9th Cir. 1969) (holding that inflicting cruel or inhuman corporal punishment or injury upon a child is a crime of moral turpitude); *Toutounjian v. INS*, 959 F.Supp. 598, 603 (W.D.N.Y. 1997) (recognizing that "sexual or physical abuse of women or children has been almost uniformly found to involve a crime of moral turpitude").  As part of the record of conviction, the protective order directs Plaintiff to refrain from committing further acts of "family abuse," and to "be of good behavior toward" his stepdaughter.  The record does not reflect either physical abuse, sexual abuse, or

inhuman corporal punishment.  Accordingly, the Court finds the record of conviction much too vague to conclude that Plaintiff's conviction under Virginia Code § 18.2-371 rises to a level of "conduct that shocks the public conscience as being inherently base, vile, or depraved," as required to be a crime of moral turpitude.  *See Jordan*, 341 U.S. at 226.  Based on the foregoing, the Court finds that from July 7, 1999 to July 7, 2000, Plaintiff did not commit a crime of moral turpitude that would bar a finding of good moral character.[5]  However, resolving this issue does not end the Court's inquiry.

## C. Plaintiff's Conduct for Good Moral Character Outside the One-Year Period

Defendants argue that Plaintiff's conduct outside the one year period, when coupled with his conviction during the statutory period, provides sufficient basis for the Court to find that Plaintiff lacks good moral character.  The Court finds this argument persuasive.

Pursuant to INA § 329, Defendant is to comply with all requirements under 8 C.F.R. § 316, unless excepted.  8 C.F.R. § 329.2(e); *Santamaria-Ames v. I.N.S.*, 104 F.3d 1127, 1130-31 (9th Cir. 1996).  8 C.F.R § 316.10 provides that when evaluating claims of good moral character the court

> is not limited to reviewing the applicant's conduct . . .[during the applicable time period], but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character."

[5] To the extent the Court finds that Plaintiff's conviction under Virginia Code § 18.2-371 is not a crime of moral turpitude, any arguments under 8 U.S.C. §1182(a)(2)(A)(ii) for the Petty Offense Exception are moot.

8 C.F.R § 316.10 (2005).

In *Marcantonio v. United States*, the Fourth Circuit recognized that inquiry into a petitioner's good moral character is not limited to the statutory period, and thus evidence of prior offenses may be considered with other evidence as a basis for finding that a petitioner has failed to establish good moral character within the statutory period. 185 F.2d 934, 936-37 (4th Cir. 1950). However, the *Marcantonio* court also noted that district courts should not rely on conduct outside the one year period as the sole basis for denying naturalization. *Id*.

Relying on similar analysis, the court in *Tan v. United States Dep't. of Justice Immigration and Naturalization Service* found the INS' denial of Tan's petition for naturalization improper. 931 F. Supp. 725, 730 (D. Haw. 1996). Tan applied for naturalization under INA § 329, after serving over 12 years of honorable military service, and accumulating medals, certificates, and letters of recommendation praising his hard work and loyalty to the military. *Id*. at 728. INS, basing its decision on one incident of misconduct that occurred 10 years before petitioner filed his application, denied Tan's application on the ground that he lacked good moral character. *Id*. In finding that Tan's conduct outside the one year statutory period did not preclude him from establishing good moral character, the Court reversed the INS decision stating that

> [t]he regulations do not require the petitioner to have impeccable character throughout his life; the congress deliberately narrowed the focus to the year preceding the application. While events outside the time period may be historically relevant to the moral character determination, these events cannot in and of themselves preclude a finding of good moral character.

*Id*. The Court further found that Tan's numerous medals, certificates, and letters of

13

recommendation praising his commitment to the military outweighed the one isolated event of his past. *Id*. At 731.

In this case, Plaintiff has committed four offenses that fall outside the one-year statutory period. These convictions include: (1) Petty Larceny on March 9, 1993, (2) Petty Larceny on March 12, 1997, (3) Discharge of a Firearm on August 9, 1999, and (4) Brandishing a Firearm on August 9, 1999. Notwithstanding these convictions, Plaintiff has served honorably for over 11 years as a member of the United States Navy. During this time, as evidenced by copies attached to Plaintiff's original petition, Plaintiff has received numerous certificates and medals for his outstanding performance. (Pl.'s Pet. Review Denial Application for Naturalization, Ex. 4). Additionally, Plaintiff has several letters of recommendation from supervisors, co-workers, and family members that praise his service in the Navy, his character as an individual of integrity, and his standing as a good family man. (*Id*.). Even considering these praises and achievements, the Court is not persuaded that Plaintiff has lived up to the standard for good moral character as required under the statute. *Sugarman v. Dougall*, 413 U.S. 634, 600 (1973) (citing H.R.Rep. No. 1365, 82d Cong.2d Sess., 78,80 (1952)). Similar to the petitioner in *Tan*, Plaintiff has received medals and praise for his military duties, however, Plaintiff's case is easily distinguishable. Unlike *Tan*, Plaintiff's offenses are not "isolated" but have spanned the life of his residence here in the United States. These offenses include two crimes of theft which, standing alone, have been uniformly held to be crimes of moral turpitude. *See Soetarto v. INS*, 516 F.2d 778, 780 (7th Cir. 1975) (Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen."). Further, two of the offenses relate to firearm charges in which Plaintiff threatened an individual with a "B.B. Gun." (Pl.'s Pet. Review Denial Application for

Naturalization, Ex. 4).  These convictions illustrate Plaintiff's propensity for dishonesty and violence.  As such, in evaluating Plaintiff's conviction record in its totality, the Court cannot justify a finding of good moral character.  The Court does not base this finding solely on Plaintiff's convictions in 1993, 1997, and 1999, but rather on the totality of all convictions including the conviction under Virginia Code § 18.2-371 which occurred during the one year statutory period.  Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion to Dismiss is **GRANTED**, without prejudice.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November  4 , 2005